UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| DAVID NORKIN, | : | Case No. 97-50043 (AHWS) |
| Debtor. | : | 02 5016 AHWS |
| DAVID NORKIN, | : | |
| Plaintiff, | : | Adversary Proceeding No.: |
| v. | : | |
| NYCTL 1998-2 TRUST and BANK OF NEW YORK, as Collateral Agent and Custodian for the NYCTL 1998-2 Trust | : | |
| Defendants. | : | April 10, 2002 |

## VERIFIED ADVERSARY COMPLAINT

The debtor, David Norkin ("Debtor"), in the above captioned matter, hereby brings this adversary proceeding as plaintiff against NYCTL 1998-2 Trust ("NYCTL") and the Bank of New York, as collateral agent and custodian for the NYCTL 1998-2 Trust ("BNY")[1] (the "Defendants"). Upon information and belief the Debtor submits the following:

### I. Summary

1. This adversary proceeding is brought pursuant to Fed. R. Bankr. P. 7065 *et seq.* and 11 U.S.C. § 105, seeking injunctive relief against the Defendants to stop them from selling property, pursuant to a tax lien foreclosure, owned by the Debtor. The sale is scheduled for April 16, 2002. If the Defendants are permitted to proceed with their foreclosure sale, the estate will be rendered insolvent and the Debtor's plan for reorganization will be severely prejudiced.

---

[1] NYCTL and BNY are collectively referred to as the "Defendants".



## II. Parties

2. Accordingly, the Debtor seeks an order from the Court enjoining the Creditors from pursuing their state court foreclosure action against the Debtor's property.

3. The plaintiff in this action is the Debtor, David Norkin, an individual with his principal abode in Greenwich, Connecticut. The Debtor voluntarily filed a petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code (Case No. 97-50043).

4. The defendants in this mater are the Defendants, against NYCTL 1998-2 Trust ("NYCTL") and the Bank of New York, as collateral agent and custodian for the NYCTL 1998-2 Trust ("BNY") with their principal places of business in New York.

## III. Jurisdiction and Venue

5. This adversary proceeding is initiated pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 7065 *et seq.*

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157.

7. Venue is proper pursuant to 28 U.S.C. § 1409.

## IV. COUNT ONE: Injunction Pursuant to 11 U.S.C. § 105

8. On January 7, 1997 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code (the "Code").

9. Upon information and belief, the Debtor's principal asset is the stock in a company known as Britestarr Homes, Inc. ("Britestarr"), a New York corporation. Britestarr's principal asset is a twenty eight (28) acre parcel of commercial property located in the Bronx, New York on which a power plant can be constructed to service New York City. The Britestarr property is situated in the Borough and County of the Bronx and State of New York and is part

2

of Lot 74, Block 2604 (hereafter referred to as the "Britestarr property"). (A copy of the property description is attached hereto as <u>Exhibit A</u>.)

10. The Debtor is the president and a director of Britestarr. Upon information and belief, the Debtor is also the sole shareholder of Britestarr. On his schedule of assets, filed in the Connecticut Bankruptcy Court he claimed, a 100% ownership interest in "Bright Star Homes, Inc.", which was a misspelling of Britestarr Homes, Inc.

11. Because of its expected high value, once sold, the Britestarr property will provide adequate resources to pay any liens on the property. The remaining equity in the property would inure to the benefit of the bankruptcy estate and, therefore, provide money to fund a plan of reorganization.

### The Tax Lien Foreclosure Action

12. On or about September 3, 1999, the Defendants filed a complaint in New York state court seeking foreclosure of a tax lien on property described as Block 2606, Lot 63, entitled <u>NYCTL 1998-2 Trust et al. v. Britestarr Homes, Inc. et al.</u>, Index No. 22927/99. (Complaint ¶ 4, <u>Exhibit B</u>.) However, the property description annexed to the Complaint as "Exhibit B" is a description of the entire Britestarr property.

13. "Exhibit B" is a description of Block 2604, Lot 74, the Britestarr property. The only reference to Block 2606, Lot 63 in "Exhibit B" is regarding Parcel E of the property description, which is an easement for ingress, egress and utilities. (Complaint, Ex. B, <u>Exhibit B</u>.) When the Debtor received the Complaint he read it and believed that it dealt only with the Block 2606, Lot 63. The Debtor did not realize the foreclosure proceeding may have affected the entire Britestarr property because the Britestarr property (Block 2604, Lot 74) is not the property described in the Tax Lien attached as "Exhibit A" to the complaint.

14. Further, the text of the Complaint refers only to Block 2606, Lot 63. (Complaint ¶ 4, Exhibit B.)

15. Upon information and belief, based on the Debtors' review of the closing documents from the purchase of the Britestarr property, the only interest Britestarr has in Block 2606, Lot 63 is for the easement for ingress, egress and utilities.

16. Upon information and belief, Britestarr is not responsible for paying any property taxes relative to Block 2606, Lot 63.

17. Based a review of the closing documents from his purchase of the Britestarr property and discussions with counsel for Consolidated Rail Corporation and its successors in interest, including, *inter alia*, CSX Corporation ("ConRail"), the Debtor believe that the actual owner of Block 2606, Lot 63 is ConRail. Moreover, to the best of his knowledge, ConRail is the entity that is responsible for paying any and all property taxes on Block 2606, Lot 63, to the extent any taxes are due.

18. ConRail was never named in the Defendants' Complaint. (Exhibit B.) Upon information and belief, based on discussions with ConRail's attorney, even though ConRail is the owner of the property, it was never given notice of the tax lien.

19. On or about March 23, 2001 a judgment of foreclosure by sale was entered. (A copy of the Judgment of Foreclosure is attached hereto as Exhibit C.) The judgment is for approximately $62,742.17.

20. Although the Debtor had believed that the Defendants' foreclosure action would only affect the ConRail property (Block 2506, Lot 63), the Debtor received a Notice of Sale regarding "Block 2602, Lot 63" on March 25, 2002. The Notice of Sale sets April 16, 2002 as the sale date for "Block 2602, Lot 63". The Notice of Sale states that the lien is for

4

approximately $48,991.53 plus interest and costs. (A copy of the Notice of Sale is attached hereto as Exhibit D.) After receiving this new information the Debtor realized that the foreclosure may affect the Britestarr property as well.

21. Upon information and belief, the Notice of Sale has improperly described the property belonging to ConRail, over which Britestarr has an easement: Block 2606, Lot 63. Accordingly, the Notice of Sale contains a serious defect which has rendered full understanding and any possible speedy resolution of this problem difficult.

22. Since receiving the Notice of Sale, the Debtor has been in constant communication with ConRail to attempt to resolve this matter expeditiously.

23. The Notice of Sale appears to be defective as it does not properly name the parcel of land to be sold. Moreover, it appears that the Foreclosure Judgment was improperly obtained because the Defendants failed to name the actual owner of the Block 2606, Lot 63 – ConRail. Upon information and belief, ConRail was never even given notice of the tax lien.

### Value of the Britestarr Property and Importance to a Reorganization

24. Even if Britestarr were somehow liable for the tax lien (which it is not) the property is sufficiently valuable to fully secure the Defendants' position. Real estate tax liens have priority over all consensual liens and mortgages and would be paid ahead of all such liens. Thus, the Defendants are at no risk of losing their money.

25. Prior to and after the Debtor declared bankruptcy, on a daily basis on behalf of Britestarr he was in the process of seeking out a potential buyer for the Britestarr property and began receiving offers, on behalf of Britestarr, for an option to buy the Britestarr property. The orderly sale of the property is critical to ensure that he is able to raise sufficient money to fund a plan for reorganization. Because of the proposed use of the property as a power plant, there are

significant land use and regulatory matters that must be resolved prior to any closing, requiring significant due diligence.

26. After considerable effort, the offer the Debtor finally accepted on behalf of Britestarr was with ABB Energy Ventures, Inc. n/k/a ABB Equity Ventures, Inc. ("ABB"). The reason the Debtor accepted this offer on behalf of Britestarr was because he believed it to be the best possible opportunity to maximize the value of the property for the estate. Moreover, given the years of due diligence involved, ABB appeared to be the best prospective buyer.

27. An Option Agreement was executed December 31, 1998. Under the terms of the Option Agreement, a closing was supposed to occur in November 2000.

28. Depending how one interprets the Option Agreement, the sale price is between $30,000,000.00 and $35,000,000.00. (Option Agreement paragraph 3(a), <u>Exhibit E</u>.) Upon information and belief, the Britestarr property may be worth even more.

29. The reason the Debtor entered into the Option Agreement, on behalf of Britestarr, with ABB was based on the favorable terms that were offered: (a) ABB owned a construction company that could handle the intended development of the Britestarr property, (B) ABB owned a company that manufactures power generators, (C) ABB, while offering a lower option payments than other suitors, agreed to grant Britestarr an internal rate of return of 19 - 22% ownership in the power plant to be constructed, which was a value of approximately $7,500,000.00 per year for 30 years, (D) ABB promised Britestarr a $3,000,000.00 - $5,000,000.00 loan against its expected ownership interest, and (E) ABB expected to exercise its option and have a financial closing by November 2000. (<u>Exhibit E</u>.) Further, ABB was to make certain option payments to Britestarr.

30. ABB failed to make the option payments on time.

31. ABB failed to make its option payment due for December 1, 2000. At that time the Debtor entered into negotiations on behalf of Britestarr with ABB to cure the default. The Debtor always expected that the ABB deal would close. During this period Britestarr was constantly approached by other prospective buyers, however, he had already had a contract with ABB and, therefore, had to turn them down. Thus, even if the ABB deal fell through, Britestarr could have sold the property to another suitor.

32. As part of the negotiations to cure ABB's default on the Option Agreement, on or about February 21, 2001 Britestarr entered into a Forbearance Agreement (a copy of which is attached hereto as Exhibit F), with ABB and the Craig Galea and Mark Kruse (the "Creditors"), who obtained a foreclosure judgment on the Britestarr property on December 27, 2000.

**Litigation Initiated by ABB Has Delayed Resolution of this Bankruptcy Case**

33. In the Forbearance Agreement, the Creditors agreed not to foreclose on the Britestarr property for a period of time in exchange for the payment of substantial consideration described in the Forbearance Agreement, pending ABB's purchase of the property.

34. Rather than purchase the property as agreed in the Option Agreement, ABB instead initiated litigation seriously undermining and complicating my ability to submit a plan for reorganization.

35. ABB has initiated litigation in New York state court in the matter entitled ABB Equity Ventures, Inc. v. Britestarr Homes, Inc., Index No. 60123/01, seeking to terminate the Option Agreement and enjoin selling Britestarr from selling the property to any third party.

36. Thereafter, Oak Point Properties, Inc. ("OPP"), a subsidiary of ABB, filed an Adversary Proceeding in this bankruptcy case entitled Oak Point Properties, Inc. v. Nokin, Adv.

Proc. No. 01-5144 (hereafter referred to as the "Oak Point Adversary Proceeding"), challenging my ownership of Britestarr.

37. Thus, the basis for a funding source for a reorganization to pay creditors has been delayed by litigation with ABB and OPP. Further, since ABB has challenged the Debtor's ownership of Britestarr, he cannot, on behalf of Britestarr, at this time, secure an alternate purchaser for, and sell, the property. Thus, the ABB and OPP litigation has caused significant delays in proposing a plan of reorganization, which would be funded by the eventual sale of the Britestarr property.

38. Litigation prompted and commenced by ABB and its subsidiary, OPP, presumably as an attempt to renegotiate a lower purchase price for the purchase of the Britestarr property has been the cause of any delay in this matter.

39. Further, because of the nature of the litigation commenced by ABB and OPP, a condition precedent to sale of the Britestarr property is resolution of the pending lawsuits.

40. Moreover, the sale of the Britestarr property is critical to pay off the Creditors and fund a reorganization plan. Indeed, the prospect for reorganization is premised on my ability to sell the Britestarr property to provide the cash necessary and that process has been staled by the ABB and OPP litigation strategy.

41. Further, the Creditors declared a default on the Forbearance Agreement and, upon information and belief, are proceeding with the foreclosure of the Britestarr property (the Debtor has filed an adversary proceeding seeking to enjoin this foreclosure action entitled: <u>David Norkin v. Galea et al.</u>, Adv. Proc. No. 02-5015 (AHWS).

42. Upon information and belief, based on a default letter the Debtor received from the Creditors, the Creditors filed their foreclosure action because of the foreclosure action initiated by NYCTL and BNY for alleged non-payment of property taxes.

43. Non-payment of property taxes is not a basis for default listed in the Forbearance Agreement for the Creditors terminating the agreement and proceeding with their foreclosure action.

### Why the Tax Lien Foreclosure Sale Must be Enjoined

44. There are obvious and serious defects with the manner in which the Defendants have pursued the tax lien foreclosure proceedings in that:

    a.    the Notice of Sale as it describes property, "Block 2602, Lot 63", which has no connection to Britestarr or the property described in the Complaint. There is no reference whatsoever to "Block 2602, Lot 63" in the Complaint, or any of the documents annexed to the Complaint or in the Judgment of Foreclosure. (Exhibits B and C.) This raises serious questions about how the foreclosure judgment was obtained and what land it affects. To the extent "Block 2602, Lot 63" is an erroneous description of the property owned by ConRail (Block 2606, Lot 63), over which Britestarr has an easement, Britestarr is erroneously listed as owner of the property. ConRail is the owner and is liable for payment for any property taxes due. (A copy of a letter to this affect from ConRail's counsel is attached hereto as Exhibit G.)

    b.    The property description attached to Complaint describes the Britestarr property (Block 2604, Lot 74), yet the Britestarr property (Block 2604, Lot 74) is not mentioned in the text of the Complaint. Accordingly, the Defendants never sought foreclosure nor were granted a judgment of foreclosure on Block 2604, Lot 74. The only reference in the Complaint is to the CONRAIL property (Block 2606, Lot 63). Britestarr's only interest in the ConRail property (Block 2606, Lot 63) is an easement for ingress, egress and utilities.

    c.    Upon information and belief, the property subject to sale belongs to ConRail, Block 2606, Lot 63. Accordingly, ConRail, not Britestarr is responsible for the payment of any property taxes owed on it. (Exhibit G.); and

9

  d. Even if Britestarr were responsible for payment of the property taxes (which it is not), if the Britestarr property, or any piece of it, were sold at a foreclosure sale, it is unlikely that its true value would be recognized.

45. As a direct and proximate result of the foreclosure sale, currently scheduled for April 16, 2002 the bankruptcy estate, the Debtor and any creditors of the esstate would be irreparably harmed in that: if the Britestarr property is not sold in an orderly manner, pursuant to a private sale or some other coordinated manner, the financial viability of any reorganization will be compromised. If the Britestarr property is foreclosed on now, the Britestarr property will be sold in a haphazard manner, through a foreclosure sale, and the true value of the property will not be recognized. Because of the complicated nature of selling the Britestarr property, given potential land use, public utility and other regulatory concerns, it is particularly important that the sale be conducted in an orderly fashion and after a buyer has engaged in the required due diligence.

46. However, before any sale could even take place, this litigation, the ABB litigation and the Oak Point Adversary Proceeding must be resolved so that all ownership issues regarding the ConRail property (Block 2606, Lot 63) and/or the Britestarr property (Block 2604, Lot 74) is made clear.

47. Since there is a substantial equity cushion in the Britestarr property, even after accounting for any possible indebtedness owed thereon, any lien the Defendants may have against the Britestarr property is adequately protected. Thus, there is little if any prejudice to the Defendants if their foreclosure action is stayed pending the resolution of whether: (a) the Foreclosure Judgment was obtained properly, (b) the relationship, if any, between the property described in the Notice of Sale, Block 2602, Lot 63, the Britestarr property (Block 2604, Lot 74) and/or the ConRrail property (Block 2606, Lot 63), (c) whether the actual owner of the property

which has been foreclosed on, ConRail, was ever noticed of the tax lien, (d) the extent of Britestarr's interest in the property foreclosed on, (e) whether Britestarr has any obligation to pay property tax on the property foreclosed on, and (f) whether there are any unpaid property taxes relative to Block 2606, Lot 63.

48.     Further, the Debtor's shares in Britestarr, a principal asset of the bankruptcy estate, will be rendered valueless. If his Britestarr shares become valueless the creditors will get no distribution.

49.     Moreover, without the proceeds raised from an eventual sale of the Britestarr property, it is unlikely that there will be any funds to pay other creditors.

50.     Development of a plan for reorganization is premised on the sale of the Britestarr property. Once the property is sold there will be sufficient money to pay the Defendants' lien, if one should exist, any other lien on the Britestarr property and compensate other creditors for allowed claims. However, complicating matters is that the Tax Lien Foreclosure, ABB's state court litigation and the Oak Point Adversary Proceeding need to be resolved before the Britestarr property can be sold.

51.     There is a substantial public and judicial interest in prohibiting the Defendants from pursuing their Tax Lien Foreclosure prior to the resolution of these other matters. Britestarr does not have any ownership interest in the property (Block 2606, Lot 63) that has been taxed and is subject to foreclosure and sale. Nevertheless the Britestarr property will be sold on April 16, 2002. Additionally, the Defendants', apparently, have not provided any notice to the actual owner of Block 2606, Lot 63, ConRail, of the foreclosure and, in any event (Exhibit G), their position is adequately secured because of the high value of the Britestarr property.

52. There is a substantial likelihood that the Debtor will be able to submit a plan for reorganization that will be confirmed once the Britestarr property is sold. Once the litigation initiated by ABB and OPP litigation matters are resolved and his ownership of the Britestarr shares are confirmed, the Debtor will be able to sell the property and pay off any lien the Defendants may have that is attributable to Britestarr. Moreover, there will be sufficient money left to fund a reorganization and pay off other claims.

53. Therefore, the Defendants' attempts to continue with their New York foreclosure sale must be immediately stopped in order to protect the integrity of the bankruptcy estate and the ability to pay allowed claims of the bankruptcy estate.

54. Pursuant to 11 U.S.C. § 105(a), the Creditors should be enjoined from foreclosing on and selling the Britestarr property.

WHEREFORE, the Debtor prays for the following relief

1. A temporary restraining order prohibiting the Defendants to pursue any foreclosure or sale with respect to the Britestarr property.

2. A preliminary and permanent injunction prohibiting the Creditors from pursuing any foreclosure actions with respect to the Britestarr property, without first obtaining leave of this Court.

3. Money damages.

4. Statutory costs.

5. Any other relief that the Court may deem just and equitable.

THE DEBTOR-PLAINTIFF: David Norkin

BY _____
Matthew K. Beatman (ct08923)
Jeffrey M. Sklarz (ct20938)
Zeisler & Zeisler, P.C.
558 Clinton Avenue
Bridgeport, CT 06605
(203) 368-4234

13

## VERIFICATION

I, David Norkin hereby verify that I have personal knowledge of the matters contained in the Verified Adversary Complaint and that the information in the Verified Adversary Complaint is true to the best of my knowledge and belief.

_____
David Norkin

Subscribed and sworn to before me, on this the 10th day of Ap. / , 2002.

_____
~~Notary Public~~ Commissioner of Superior Court.

2000 USBC, District of Connecticut

| B 104 (Rev 2/92) | **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court use Only) |
|---|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| David Norkin | NYCIL 1998-2 Trust and Bank of New York, as Collateral Agent and Custodian for the NYCIL 1998-2 Trust |

| **ATTORNEYS** (Firm Name, Address, Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
| Zeisler & Zeisler, PC<br>558 Clinton Ave.<br>Bridgeport, CT 06605 | Certilman, Balin, Adler & Hyman<br>90 Merrick Ave.<br>East Meadow, NY 11354 |

**PARTY** (Check one box only)  ☐ 1 U.S. PLAINTIFF  ☐ 2 U.S. DEFENDANT  ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
1. 11 USC 105 - injunction

02  5016 AHWS

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☐ 454 To Recover Money or Property
☐ 435 To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458 To obtain approval for the sale of both the interest in the estate and of a co-owner in property
☐ 424 To object or to revoke a discharge 11 U.S.C. §727

☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
☐ 426 To determine the dischargeability of a debt 11 U.S.C. §523
☒ 434 To obtain an injunction or other equitable relief
☐ 457 To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456 To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459 To determine a claim or cause of action removed to a bankruptcy court
☐ 498 Other (specify)

**ORIGIN OF PROCEEDINGS** (Check one box only.)  ☒ 1 Original Proceeding  ☐ 2 Removed Proceeding  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another Bankruptcy Court  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| DEMAND | NEAREST THOUSAND $ | OTHER RELIEF SOUGHT<br>Injunctive Relief | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR<br>David Norkin | BANKRUPTCY CASE NO.<br>97-50043 (AHWS) |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISIONAL OFFICE<br>Bridgeport | NAME OF JUDGE<br>Shiff |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

**FILING FEE** (Check one box only)  ☐ FEE ATTACHED  ☐ FEE NOT REQUIRED  ☒ FEE IS DEFERRED

| DATE<br>4-10-02 | PRINT NAME<br>Jeffrey M. Sklarz, Esq. | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

IN THE MATTER OF David Novkin

DEBTOR(S)

CASE NO. 97-50043

ADV. NO. 02-5016

DOC. # 1

CLAIM #

# SUBSTITUTION FORM

The attachments to this document were not imaged. If these attachments need to be reviewed and/ or copied, please refer to the original case file.

DEBORAH HUNT

CLERK OF COURT